UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff<br><br>v.<br><br>**REAL PROPERTY KNOWN AS<br>1 WEST CENTURY DRIVE #23B<br>LOS ANGELES, CALIFORNIA 90067**<br>Defendant | § § § § § § § § § § | CIVIL CASE NO. C-18-CV-67 |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, the United States of America, by and through its United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, represents:

## NATURE OF ACTION

1. This is a civil forfeiture action in rem brought under: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section

1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Real Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district. Further, Title 18 U.S.C. §981(h) provides that "in addition to venue provided in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property if found or in the judicial district in which the criminal prosecution is brought."

## DEFENDANT REAL PROPERTY

3. The defendant is real property located at 1 West Century Drive #23B, Los Angeles, California 90067, with all appurtenances, improvements, and attachments thereon, legally described as:

> The land referred to in this Report is situated in the City of Los Angeles, County of Los Angeles, State of California, and is described as follows: A Condominium Comprised of:
>
> Parcel 1:
> An undivided 1/141st interest in and to Lot 2 common element (as defined in the "Declaration" herein defined below) of Tract No. 63701, in the City of Los Angeles, County of Los Angeles, State of California, as per map filed in Book 1351, Pages 59 through 71, inclusive, of Maps, in the Office of the Los Angeles County Recorder (the "Tract").
>
> Excepting therefrom, all minerals, oil, gas and hydrocarbons and the right to explore for, develop, produce and extract the same, but without right of entry upon the surface or upper 500 feet (measured from the surface) of said land, as reserved by Fox Realty

Corporation of California, a Corporation, in deed recorded April 17, 1961 in Book D-1190, Page 104, Official Records.

Parcel 2:
Unit No. U-23B as shown and defined on that certain Condominium Plan for Lots 2 and 4 of said tract recorded on September 28, 2009 as Instrument No. 20091466145 of Official Records in the Office of the Los Angeles County Recorder (the "Condominium Plan").

Parcel 3:
An exclusive use easement for parking purposes to be appurtenant to Parcels 1 and 2 above, in and to those portions of the residential garage (as defined in the Declaration) consisting of reserved parking space(s) P-N/A and P-N/A as shown and defined on the condominium plan. [Note: Parcel 3 should be used only for the purchase of a reserved parking space(s) (as defined in the Declaration)]

Parcel 4:
An exclusive use easement for storage purposes to be appurtenant to Parcels 1 and 2 above, in and to Storage Area S-111 as shown and defined on the Condominium Plan

Parcel 5:
An exclusive use easement for terrace purposes to be appurtenant to Parcels 1 and 2 above, in and to private terrace area(s) T-23B-A and T-23B-B as shown and defined on the Condominium Plan.

Parcel 6:
An exclusive use easement for cabana purposes to be appurtenant to Parcels 1 and 2 above, in and to cabana CA-N/A as shown and defined on the Condominium Plan. [Note: Parcel 6 should be used only for the purchase of a cabana (as defined in the Declaration).]

Parcel 7:
An exclusive use easement for office suite purposes to be appurtenant to Parcels 1 and 2 above, in and to office suite OS-N/A as shown and defined on the Condominiu Plan. [Note: Parcel 7 should be used only for the purchase of an office suite (as defined in the Declaration).]

Parcel 8:
An exclusive use easement for guest suite purposes to be appurtenant to Parcels 1 and 2 above, in and to guest suite GS-N/A as shown and defined on the Condominium Plan. [Note Parcel 8 should be used only for the purchase of a guest suite (as defined in the Declaration).]

Parcel 9:
An exclusive use easement for elevator lobby purposes to be appurtenant to Parcels 1 and 2 above, in and to private lobby area PLA-23B as shown and defined on the

Condominium Plan

Parcel 10:
All use rights and easements specified as existing in or granted to an "owner" or an owner of a "Residential Condominium" or "Residential Unit" in that certain Declaration of Covenants, Conditions and Restrictions and Reservation of Easements (the Century) recorded on January 28, 2010 as Instrument No. 2010-0123163 of Official Records of Los Angeles County, California (the "Declaration").

Parcel 11:
The right to have 2 "authorized vehicles" (as defined in the Declaration) valet parked in the "General Use Parking Spaces"(as defined in the Declaration) in the "Project Garage" (as defined in the declaration) pursuant to Section
10.3.3 of the Declaration.

Parcel 12:
The non-exclusive right, together with all other owners of "Residential Units" (as defined in the Declaration) of use and enjoyment of in the residential common area (as defined in the Declaration).

Parcel 13:
The non-exclusive rights, together with all owners of residential units or the commercial lot (as defined in the declaration) of use and enjoyment of the general common area (as defined in the Declaration).

The above legal description is incorporated herein by reference and hereafter referred to as the "Defendant Real Property."

4. The record owner of the Defendant Real Property is CENTURY 23B, LLC, a California Limited Liability Company (hereinafter referred to as "CENTURY 23B").

FACTS

5. Jose Manuel SAIZ-Pineda ("SAIZ-Pineda") was the Secretary of Administration and Finance for Tabasco from January, 2007 through December, 2012. Prior to his appointment as the Secretary of Administration and Finance, SAIZ-Pineda was employed at various companies in the private sector where worked alongside co-conspirator Martin Alberto MEDINA-Sonda ("MEDINA-Sonda"). During his tenure in the private sector, SAIZ-Pineda provided

4

consultation to various states and municipalities in Mexico, affording him the opportunity to experience government service and become acquainted with the eventual Governor of Tabasco, Andres Granier Melo ("Granier"). Granier entered office as the Governor of the state of Tabasco in January, 2007. SAIZ-Pineda assumed his government position as Secretary of Administration and Finance for the state of Tabasco at the same time and was appointed by Granier.

6. As the Secretary of Administration and Finance for the state of Tabasco, SAIZ-Pineda earned an annual salary of approximately $80,000 USD. The income for high-ranking state officials in Tabasco does not exceed $150,000 USD annual salary. For six years, at the highest pay grade of state government, the most income that SAIZ-Pineda could have legitimately earned would have been approximately $900,000 USD.

7. In late 2012, the federal prosecutor's office, Procuraduria General de la Republica ("PGR") of Mexico, and the Tabasco Attorney General's Office (Fiscalia General Del Estado "FGE") initiated an investigation regarding the state debt of Tabasco, which had risen to over one billion pesos (approximately $100 million USD) during the tenure of the Granier administration. According to the new administration, there are state funds that are unaccounted for that equal an equivalent of approximately $190 million USD.

9. SAIZ-Pineda, along with his co-conspirators, created offshore personal holding companies, trusts, and domestic shell companies to facilitate entry of proceeds into the United States financial system. SAIZ-Pineda, along with his co-conspirators, used the shell companies to establish investment accounts at various financial institutions in the United States. Funds from the United Mexican States, as well as Singapore, were then transferred into the investment and banking accounts in an attempt to legitimize the proceeds derived from the theft of state

funds from the state of Tabasco.

10. Information in this investigation has been received as a result of a Mutual Legal Assistance Treaty (MLAT) from the state of Tabasco, as well as from various financial institutions, title companies, and open sources.  Analysis of the information led to the discovery of the Defendant Real Property.

11.    SAIZ-Pineda ended his government tenure as the Secretary of Finance and Administration on December 31, 2012.  On May 22, 2013, approximately 88,560,134 Mexican pesos (approximately $8 million USD) were seized by Mexican authorities from a residence associated with Marlis Cupil-Lopez, the former secretary of SAIZ-Pineda.  This seizure led to the execution of a search warrant at the office of SAIZ-Pineda, located at Sanchez Magallanes #1113, Villahermosa, Tabasco, where authorities subsequently seized documentation corroborating the money laundering scheme.

12.    On May 30, 2013, the U.S. visas of SAIZ-Pineda and Granier were revoked at the request of Mexican authorities due to flight risk regarding their ongoing investigation.  On June 8, 2013, SAIZ-Pineda was stopped at the Pharr, Texas Port of Entry by the Department of Homeland Security.  SAIZ-Pineda was denied entry into the United States and returned to Mexico, where he was arrested by Mexican authorities and charged with illegal enrichment.

13.    On June 11, 2013, the U.S. visa of Silvia Beatriz PEREZ-Ceballos ("PEREZ-Ceballos"), the wife of SAIZ-Pineda, was revoked at the request of Mexican authorities, and SAIZ-Pineda was publically implicated in the public corruption investigation being conducted by the state of Tabasco.  On or about June 24, 2013, Granier was taken into custody on charges of money laundering and tax evasion.

14.    In October, 2014, MEDINA-Sonda was arrested in Quintana Roo, Mexico, on

charges of kidnapping his three minor children.  While incarcerated, in December, 2014, MEDINA-Sonda was additionally charged by Mexican authorities with money laundering stemming from a money seizure that occurred in November, 2007 and was convicted of the money laundering charges in April, 2017 and sentenced to 12 years imprisonment.  MEDINA-Sonda is also alleged to have plotted the murder of his former wife in March, 2017.  To date, both SAIZ-Pineda and Granier remain incarcerated in the state of Tabasco while awaiting adjudication.

15. Defendant Real Property was purchased during and in furtherance of the money laundering scheme.  On March 17, 2008, MEDINA-Sonda entered into contract for the purchase of the defendant real property.  The buyer was listed as PERFORMANCE INVESTMENT LIMITED, with MEDINA-Sonda listed as the authorized representative.

16. It should be noted, PERFORMANCE INVESTMENT LIMITED was established on November 28, 2006, in Dublin, Ireland, as a personal holding company (PHC) for the benefit of SAIZ-Pineda.  On this same date, P.I. TRUST was created, listing SAIZ-Pineda as the owner of P.I. TRUST, and MEDINA-Sonda listed as the Original Protector. GLOBAL TRUSTEES (NZ) LIMITED was the trust administrator (or trustee), and granted the shares of PERFORMANCE INVESTMENT LIMTIED by SAIZ-Pineda. Thus, PERFORMANCE INVESTMENT LIMITED is beneficially owned by SAIZ-Pineda via P.I. TRUST, but administered by GLOBAL TRUSTEES (NZ) LIMITED.

17. SAIZ-Pineda created the PERFORMANCE INVESTMENT LIMITED and P.I. TRUST approximately one month prior to assuming his government position, which he began on January 1, 2007.  At the time MEDINA-Sonda entered into contract for the purchase of Defendant

Real Property, SAIZ-Pineda had been in his role as the Secretary of Administration and Finance for just over one year.

18. On November 26, 2008, approximately eight months after MEDINA-Sonda entered into contract, CENTURY 23B LLC was established in the state of California. It was listed as having one Manager, JEC Holdings LLC (Delaware). On January 15, 2009, the "Assignment of Contract" letter was executed, transferring the sale from PERFORMANCE INVESTMENT LIMITED, to CENTURY 23B, a California limited liability company. The letter was signed by MEDINA-Sonda as Authorized Representative for PERFORMANCE INVESTMENT LIMITED and Manager of JEC HOLDINGS LLC (Delaware) Manager of CENTRUY 23B LLC. The agreement was signed by MEDINA-Sonda as Manager of JEC Holdings (NZ) Limited Partnership and JEC Holdings LLC (Delaware).

19. On August 17, 2009, form "Actions by Sole Member of JEC HOLDINGS LLC" appointed Angel GONZALEZ-Monterrubio as an additional Manager of the company and granted him the same authority as the existing Manager, MEDINA-Sonda. JEC (Delaware) was formed in the state of Delaware on September 17, 2008. Along with several other documents bearing his signature, this form, "Actions by Sole Member of JEC HOLDINGS LLC," confirmed that MEDINA-Sonda was the Manager of the Delaware company. Documents were not filed with the state of Delaware officially designating Angel GONZALEZ-Monterrubio as Manager until June 28, 2011, almost two years later.

20. The purchase price was listed as $6.5 million USC, with an initial deposit of $325,000.00 USC due on March 26, 2008, and an additional deposit of $325,000.00 USC due on July 28, 2008. The wire transfers totaled $6,499.978 and were conducted as follows:

(1) 03/26/2008 - $325,000.00 USC - . PERFORMANCE INVESTMENT LIMITED

(2) 08/06/2008 - $324,978.00 USC - PRODUCTORES POR EL CAMPO
(3) 05/13/2009 - $400,000.00 USC  - ALLA GALLAXY REAL ESTATE
(4) 05/19/2009 - $400,000.00 USC  - ALLA GALLAXY REAL ESTATE
(5) 05/19/2009 - $400,000.00 USC  - ALLA GALLAXY REAL ESTATE
(6) 05/19/2009 - $400,000.00 USC  - ALLA GALLAXY REAL ESTATE
(7) 05/19/2009 - $400,000.00 USC  - ALLA GALLAXY REAL ESTATE
(8) 05/28/2009 - $10,000.00 USC – GALLAXY REAL ESTATE
(9) 05/28/2009 - $450,000.00 USC – GALLAXY REAL ESTATE
(10) 06/03/2009 - $400,000.00 USC – GALLAXY REAL ESTATE
(11) 06/03/2009 - $400,000.00 USC – GALLAXY REAL ESTATE
(12) 06/03/2009 - $400,000.00 USC – GALLAXY REAL ESTATE
(13) 06/03/2009 - $200,000.00 USC – GALLAXY REAL ESTATE
(14) 06/05/2009 - $90,000.00 USC – GALLAXY REAL ESTATE
(15) 06/09/2009 - $100,000.00 USC – GALLAXY REAL ESTATE
(16) 06/09/2009 - $400,000.00 USC - GALLAXY REAL ESTATE
(17) 06/12/2009 - $400,000.00 USC – GALLAXY REAL ESTATE
(18) 06/18/2009 - $600,000.00 USC – GALLAXY REAL ESTATE
(19) 06/19/2009 - $400,000.00 USC – GALLAXY REAL ESTATE

21. On August 31, 2009, MEDINA-Sonda requested the transfer of sale from PERFORMANCE INVESTMENT LIMITED to CENTURY 23B. MEDINA-Sonda stated that he was the Manager and Authorized Representative for both PERFORMANCE INVESTMENT LIMITED and CENTURY 23B. Included was the "Amended Escrow Instructions," dated September 8, 2009, which transferred rights of all funds in escrow from PERFORMANCE INVESTMENT LIMITED to CENTURY 23B LLC. The form was signed by MEDINA-Sonda on behalf of PERFORMANCE INVESTMENT LIMITED, CENTURY 23B LLC, and JEC HOLDINGS LLC.

22. On April 8, 2010, a letter was provided from The Century Building to MEDINA-Sonda informing that the sales price would be lowered from $6.5 million USC to $5.7 million USC. MEDINA-Sonda signed his name on behalf of PERFORMANCE INVESTMENT LIMITED and handwrote "CENTURY 23B."

23. Additional information provided by the escrow company regarding Defendant Real Property included a legal research sheet, which detailed the incoming and outgoing wire transfers for the purchase of the residence. According to the sheet, the purchase was realized by approximately nineteen (19) incoming wire transfers originating from Mexico. The first two (2) incoming wire transfers are detailed below. The remaining wire transfers originated by: ALLA GALLAXY REAL ESTATE S.A. de C.V., located in Colonia Napoles, Benito Juarez, Distrito Federal.

<u>First Wire Transfer</u>
On March 26, 2008, an email notification regarding incoming wire notification of $325,000.00 USC. The wire instructions detailed the originator of the funds as: Merrill Lynch and Co, Inc., Account ending in #7050 in the name of PERFORMANCE INVESTMENT LIMITED. NOTE: On April 16, 2007, Merrill Lynch and Co, Inc., Account ending in #7050, held by PERFORMANCE INVESTMENT LIMITED, was established by MEDINA-Sonda. At account opening, SAIZ-Pineda was listed as the beneficial owner of the PERFORMANCE INVESTMENT LIMITED account and MEDINA-Sonda was listed as Power of Attorney. Both SAIZ-Pineda and MEDINA-Sonda replied in the negative when asked if the client is a current or former Politically Exposed Person (PEP). Both SAIZ-Pineda and MEDINA-Sonda replied in the negative when asked if the client is an associate of a current or former PEP. The PERFORMANCE INVESTMENT LIMITED account was initially funded by transfer from the Merrill Lynch account held by COMPREHENSIVE ADVISORY AND DEVELOPMENT COMPANY LIMITED, which had been funded by incoming transfers from FEDERACION TABASQUENA. Additional incoming transfers directly from FEDERACION TABASQUENA further funded the Merrill Lynch PERFORMANCE INVESTMENT LIMITED account.
  At the time of the Merrill Lynch application, SAIZ-Pineda had assumed office as the Secretary of Administration and Finance for the state of Tabasco. SAIZ-Pineda entered office on 01/01/2007, when the administration of Governor Andres GRANIER-Melo began, approximately three months prior to account opening.
  The aforementioned wire transfer activity was deemed suspicious by Merrill Lynch. According to the customer's financial advisor, SAIZ-Pineda had advised that he needed to pay for a real estate purchase in U.S. dollars, and he did not have any U.S. dollars readily available in any other account. SAIZ-Pineda advised that he would replenish the Merrill Lynch investment account once he was able to exchange Mexican pesos. According to Merrill Lynch, the following day, on March 28, 2008, an incoming wire transfer was received in the account held by PERFORMANCE INVESTMENT LIMITED for the amount of $325,000.00 USC from an account held at Banco Mercantil del Norte by JOFESA SC, Sanchez Magallanes 1113, Villahermosa, Tabasco. JOFESA SC is a

Mexican company associated with SAIZ-Pineda. SAIZ-Pineda publically declared during his time in office that he ended his ownership of JOFESA SA at the time he entered office in December 2006.

Second Wire Transfer
On August 6, 2008, an incoming wire transfer of $324,978.00 USC was transferred into the escrow account for Defendant Real Property. The originator of the wire was listed as JPMorgan Chase Bank Account ending in #6374, in the name of PRODUCTORES POR EL CAMPO, AR DE CV, located in Villahermosa, Tabasco, Mexico. PRODUCTORES POR EL CAMPO was the same company that originated two escrow deposits towards the purchase of another real property from September to December of 2008 in New York in the amount of $5.8 million USC.

24. The purchase of Defendant Real Property was similar to the purchase of a condominium in New York by SAIZ-Pineda and MEDINA-Sonda, which was finalized in February of 2009, about one year prior to the closing of the Defendant Real Property. MEDINA-Sonda, acting on behalf of PERFORMANCE INVESTMENT LIMITED (the personal holding company owned by SAIZ-Pineda), entered into contract for the New York residence in March of 2008, during the same time period that the purchase of the Defendant Real Property was initiated. Prior to closing, MEDINA-Sonda changed the ultimate purchaser to EAST 74TH STREET HOLDINGS LLC. The name of the New York holding company was later changed to SAMURAI INVESTMENT LLC. SAIZ-Pineda and MEDINA-Sonda created layer upon layer in an effort to mask the true ownership of the residence, just as they also did with the purchase of Defendant Real Property.

25. As noted above, the purchase of the Defendant Real Property was initiated in March, 2008, but was not completed until May, 2010. During that time period, in addition to the aforementioned New York residence, SAIZ-Pineda also finalized the purchase of two residences located in Miami, Florida. The final purchases of the Miami, Florida residences occurred in May

and November of 2009, approximately one year prior to the final closing of the Defendant Real Property.

26. It is significant to note that the aforementioned real property purchases were finalized as cash transactions. This investigation has revealed the purchase of seven real properties, all conducted as cash transactions, totaling approximately $30 million USC, while SAIZ-Pineda held public office. During his government tenure, SAIZ-Pineda was required to file annual wealth and asset declarations for the state of Tabasco, which includes the requirement to declare assets owned internationally. In those annual filings, SAIZ-Pineda did not disclose the ownership of any of the aforementioned properties, to include the Defendant Real Property.

27. On April 26, 2017, a federal grand jury in the Southern District of Texas, Corpus Christi, Texas, returned a true bill indictment for SAIZ-Pineda, Silvia PEREZ-Ceballos (the wife of SAIZ-Pineda), and MEDINA-Sonda. They were charged in a two-count indictment with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) and a bank fraud conspiracy, in violation of Title 18, United States Code, Sections 1344 and 1349. In addition to the criminal indictment, criminal forfeiture included seven real properties, to include the Defendant Real Property, six financial accounts, and a personal money judgment for $50 million USD. In October of 2017, PEREZ-Ceballos was convicted of a bank fraud conspiracy after a federal jury trial. SAIZ-Pineda and MEDINA-SONDA remain in custody in Mexico.

28. During the jury trial in PEREZ-Ceballos case, multiple witnesses testified that Defendant Real Property belongs to SAIZ-Pineda.

29. Also during the jury trial of PEREZ-Ceballos, LATOUR identified his role as the "wallet" in the money laundering scheme of SAIZ-Pineda. LATOUR explained that he was responsible for paying expenses through the use of shell companies so that the names of SAIZ-

Pineda and PEREZ-Ceballos would not appear on documentation. LATOUR testified that he acted as the "wallet" for multiple real property transactions, including Defendant Real Property, and numerous other expenses on behalf of SAIZ-Pineda and PEREZ-Ceballos. These transactions occurred during the government tenure of SAIZ-Pineda and continued even after the arrest of SAIZ-Pineda by Mexican authorities. LATOUR testified that after the arrest of SAIZ-Pineda, LATOUR continued to hide assets for SAIZ-Pineda, including millions of dollars in personal assets and real properties. LATOUR also sent multiple bulk cash deliveries to Houston, Texas, for the benefit of PEREZ-Ceballos after the arrest of SAIZ-Pineda.

30. To date, Defendant Real Property continues to be held in the name of CENTURY 23B. Further, the government has been informed that the Defendant Real Property has been abandoned and is currently in arrears for homeowner's association fees that have not been paid since the trial of PEREZ-Ceballos.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Real Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claims must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

## PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Real Property in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

Respectfully submitted,

ABE MARTINEZ
Acting United States Attorney

By: s/ Julie K. Hampton
JULIE K. HAMPTON
Assistant United States Attorney
State Bar No. 24032269
Federal Bar No. 431286
800 N. Shoreline Blvd., Suite 500
One Shoreline Plaza
Corpus Christi, Texas 78401
(361) 888-3111

## VERIFICATION

I, Patricia Trevino, a special agent with Drug Enforcement Administration, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

_____
Patricia Trevino
Special Agent, DEA

Sworn and subscribed before me, the undersigned authority, on this <u>7th</u> day of <u>March</u>, 2018.

_____
Notary Public in and for the State of Texas

My commission expires:
9-25-2020

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail, return receipt requested to:

1. JOSE MANUEL SAIZ-PINEDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs. Also sending notice to attorney Andres Sanchez, attorney for Jose Manuel SAIZ-Pineda, Parker & Sanchez, PLLC, 712 Main Street, Suite 1600, Houston, Texas 77002.
2. MARTIN ALBERTO MEDINA-SONDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
3. SILVIA BEATRIZ PEREZ-CABALLOS, through attorney F. Andino Reynal, The Esperson Building, 808 Travis, Suite 1553, Houston, Texas 77002.
4. Celso Perez-Ceballos, 2706 Lytham, Sugarland, Texas 77479.
5. Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
6. CENTURY 23B through Executive Officer Jose Latour, serving Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
7. Fernando Saiz-Pineda, through attorney Charles Medlin, 2211 Norfolk St., Ste. 735, Houston, Texas 77098.
8. 1 West Century Drive #23B, Los Angeles, CA 90067 Homeowner's Association, through attorney Daniel Medioni, Wolf, Rifkin, Shapiro, Schulman & Rabkin, 11200 West Olympic Blvd., 9th Floor, Los Angeles, California 90064.

on this the 7th day of March, 2018.

s/ Julie K. Hampton
JULIE K. HAMPTON
Assistant United States Attorney